UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

Case No. 6:25-cr-123-WWB-DCI
18 U.S.C. § 1343

JONATHAN P. MARONEY

### INDICTMENT

The grand jury charges:

### COUNTS ONE THROUGH FIVE
(Wire Fraud)

#### A. Introduction

At times material to this Information:

1. Harbor City Capital Corp. ("Harbor City") was a Nevada corporation formed in December 2014 with its principal place of business in Melbourne, Florida. Harbor City and its securities were never registered with the Securities and Exchange Commission (the "Commission") in any capacity. Harbor City filed a Form D Notice of Exempt Offering of Securities with the Commission on January 29, 2019, seeking to raise $1,000,000 in debt securities with a $50,000 minimum investment amount purportedly under a Rule 506(c) exemption.

2. Harbor City Ventures, LLC ("HC Ventures") was a Nevada limited liability company established in 2014 with its principal place of business in Melbourne, Florida. HC Ventures and its securities were never registered with the Commission in any capacity.

3. HCCF-1 LLC ("HCCF-1") was a Nevada limited liability company formed in August 2018 with its principal place of business in Melbourne, Florida. HCCF-1 is wholly-owned and managed by Harbor City. HCCF-1 and its securities were never registered with the Commission in any capacity.

4. HCCF-2 LLC ("HCCF-2") was a Nevada limited liability company formed in April 2019 with its principal place of business in Melbourne, Florida. HCCF-2 is wholly-owned and managed by Harbor City. HCCF-2 and its securities were never registered with the Commission in any capacity.

5. HCCF-3 LLC ("HCCF-3") was a Wyoming limited liability company formed in September 2019 with its principal place of business in Melbourne, Florida. HCCF-3 is wholly-owned and managed by Harbor City. HCCF-3 and its securities were never registered with the Commission in any capacity.

6. HCCF-4 LLC ("HCCF-4") was a Wyoming limited liability company formed in November 2019 with its principal place of business in Melbourne, Florida. HCCF-4 is wholly-owned and managed by Harbor City. HCCF-4 and its securities were never registered with the Commission in any capacity.

7. HCCF-5 LLC ("HCCF-5") was a Wyoming limited liability company formed in July 2020 with its principal place of business in Melbourne, Florida. HCCF-5 is wholly-owned and managed by Harbor City. HCCF-5 and its securities were never registered with the Commission in any capacity.

8. Harbor City Digital Ventures, Inc. ("HC Digital") was a Nevada corporation established in 2017 with its principal place of business in Melbourne,

Florida. HC Digital was the "Operator" of the HCCF-1, HCCF-2, HCCF-3 and HCCF-4 offerings.

9.  HCC Media Funding, LLC ("HCC Media") was a Wyoming limited liability company established in 2020 with its principal place of business in Melbourne, Florida. HCC Media was both the Manager and "Operator" of the HCCF-5 offering.

10. JONATHAN P. MARONEY was the founder, Chief Executive Officer, and President of Harbor City, and the President of HC Digital. He also was the sole Manager of HC Ventures, HCC Media, HCCF-1, HCCF-2, HCCF-3, HCCF-4, and HCCF-5. In June 2020, the Alabama Securities Commission issued a cease-and-desist order prohibiting JONATHAN P. MARONEY, Harbor City, and HC Digital from offering or selling securities in the state.

### B. The Scheme

11. Beginning at a time unknown to the Grand Jury, but beginning at least by in or about 2015, and continuing thereafter through and including in or about April 2021, in the Middle District of Florida, and elsewhere, the defendant,

JONATHAN P. MARONEY,

did knowingly and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property, by means of false and fraudulent pretenses, representations, and promises that related to material facts, the substance of which scheme and artifice to defraud is described below.

### C. Manner and Means

12. The manner and means used to accomplish the scheme and artifice to defraud included, among others, the following:

    a. It was part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did obtain money, and attempt to obtain money, from individuals and others through investments offered through a series of unregistered fraudulent securities offerings in several entities formed and controlled by JONATHAN P. MARONEY, including HC Ventures and five "special purpose" entities, HCCF-1, HCCF-2, HCCF-3, HCCF-4 and HCCF-5 (collectively referred to as the "HC SPEs").

    b. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did sell, and offer for sale, securities sold in the form of either promissory notes, funding agreements, or "high yield, secured bonds" (in the case of the HC SPEs), promising returns ranging from 1% to 5% per month.

    c. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did falsely represent that investors would receive a full return of their investment principal upon maturity.

    d. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did falsely represent that the purpose of the offerings was to provide bridge funding for Harbor City's and its related companies' customer lead generation sales businesses.

   e. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did falsely represent that companies had contracted with Harbor City in advance for an agreed upon quantity of new customer leads for their business, on a cost-per-lead basis, and that the proceeds from the HC SPEs bond offering would be "loaned" to either HC Digital or HCC Media, which were the entities charged with managing the SPEs and administering the internet lead generation campaigns.

   f. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did provide investors with offering documents that falsely represented that the leads generated from the campaigns were to be sold at a substantial profit to Harbor City's "pipeline" of business clients within the "$200 Billion internet advertising sector" and that, from the resulting profits, investors would receive monthly interest payments followed by the return of their principal when their notes or bonds matured.

   g. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did solicit and raise money from investors through Harbor City's website and a series of on-line marketing videos using interstate wires that featured JONATHAN P. MARONEY that were posted both on the company's website and on YouTube.

   h. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did falsely represent in the on-line videos that investor money would be used to fund Harbor City's lead generation business,

that investors would receive guaranteed rates of return, and that the investors were "safe as a CD."

　　　　i.　　It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did solicit and raise money from investors through pop-up advertisements on social media platforms like Facebook that promised guaranteed annual returns of up to 18%.

　　　　j.　　It was a further part of the scheme and artifice to defraud that the investments offered by JONATHAN P. MARONEY were not legitimate investments, but were a "Ponzi" scheme by which money from later investors would be paid to earlier investors.

　　　　k.　　It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did use portions of the money that was obtained as a result of devising and executing the scheme and artifice to defraud for his own personal use.

　　　　l.　　It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did conceal the scheme and artifice to defraud by sending an email update to investors about Harbor City and the Harbor City related companies that falsely represented that there was such "a MASSIVE pipeline of standing orders for leads" from companies seeking Harbor City's services and expertise that Harbor City did not "expect to have enough capital to serve ALL of that demand."

m. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did falsely represent that the funding for their customer lead generation business was "provided as a line of credit that is guaranteed by a UCC-1 filed lien" using Harbor City's, HC Digital's, and HCC Media's accounts receivable and purchase orders as collateral and that with this "secure position with guaranteed repayment," that he and his entities were able to mitigate the risk of loss to its investors, when, in truth and in fact, as JONATHAN P. MARONEY then and there well knew, no UCC lien filings had been made for any loan-related business transactions.

n. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did cause investors in the HCCF-4 and HCCF-5 offerings to be provided with an additional purported "bank guarantee" in the form of a "Standby Line of Credit (SBLC)" issued to Harbor City from what is described as a "top tier bank" that JONATHAN P. MARONEY falsely represented would be available if bond payments could not be made, when, in truth and in fact, as JONATHAN P. MARONEY then and there well knew, no such SBLC had ever been issued to JONATHAN P. MARONEY or any of his entities.

o. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did falsely represent his background and experience, including by failing to disclose to investors and prospective investors that in June 2020, securities regulators in Alabama issued an administrative cease-and-desist order against JONATHAN P. MARONEY, Harbor City, and HC Digital for

7

offering and selling unregistered securities and making misstatements and omissions to residents in the state.

p. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did cause interstate wires to be used by himself and his investors, including to engage in on-line marketing that was seen by potential investors located outside of Florida, to send copies of various documents by email to investors located outside of Florida, to make and receive interstate telephone calls with investors located outside of Florida, to exchange emails with investors located outside of Florida, and to cause investors to send funds to him for investment that were routed using servers located outside of Florida.

q. It was a further part of the scheme and artifice to defraud that JONATHAN P. MARONEY would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

### D. Interstate Wire Transmissions

13. On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

JONATHAN P. MARONEY,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and

cause to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|---|---|---|
| One | May 7, 2020 | $100,000 interstate wire from J. S.'s Synchrony Bank account x3992 to Harbor City Capital Corp.'s Wells Fargo account x4389 |
| Two | July 8, 2020 | $100,000 interstate wire from J. S.'s Synchrony Bank account x3992 to Harbor City Capital Corp.'s Wells Fargo account x4389 |
| Three | July 13, 2020 | $100,000 interstate wire from J. S.'s Synchrony Bank account x3992 to Harbor City Capital Corp.'s Wells Fargo account x4389. |
| Four | July 13, 2020 | $140,000 interstate wire from M.D.'s Suncoast Credit Union account x1193 to Harbor City Capital Corp.'s JP Morgan Chase account x7215 |
| Five | August 10, 2020 | $100,000 interstate wire from G.H.'s Suncoast Credit Union account x8332 to Harbor City Capital Corp.'s JP Morgan Chase account x7215 |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE

1. The allegations contained in Counts One through Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, the following: a money judgment in the amount of at least $17.1 million representing the amount of proceeds obtained by the defendant as a result of the conduct alleged in the Indictment.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL.



GREGORY W. KEHOE
United States Attorney

By: _____
Stephanie A. McNeff
Assistant United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

FORM OBD-34
April 25

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Orlando Division

THE UNITED STATES OF AMERICA

vs.

JONATHAN P. MARONEY

INDICTMENT

Violations: 18 U.S.C. § 1343

███████████████████████

Filed in open court this 30th day

of April, 2025.

_____
Clerk

Bail $_____

GPO 863 525